IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DARYL HARPER,                    *

Plaintiff,                    *

v.                           *       Civil Action No. SAG-20-170

WARDEN CASEY CAMPBELL,    *
ROBERT SARTIN,
JAMES KING,                  *
MATTHEW SWORD,
MEDICAL DEPARTMENT,       *
STANFORD HOFFMAN, and
CORIZON HEALTH INC.,        *

Defendants.              *
                         ***

## MEMORANDUM OPINION

Self-represented plaintiff Daryl Harper, an inmate presently incarcerated at Roxbury Correctional Institution ("RCI") in Hagerstown, Maryland, filed this 42 U.S.C. § 1983 action against defendants Casey Campbell, Robert Sartin, Matthew Sword, James King, and Stanford Hoffman (collectively, the "Correctional Defendants")[1] and Corizon Health Inc. ("Corizon").[2] ECF No. 1. On April 7, 2020, Corizon filed a Motion to Dismiss or, Alternatively, for Summary Judgment (ECF No. 11), and on June 29, 2020, the Correctional Defendants filed a similarly titled motion (ECF No. 13). The court informed Harper, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that the failure to file a response in opposition to the motions could result in dismissal of the complaint. ECF Nos. 12, 14. Harper has filed nothing further.

---

[1] The Clerk shall be directed to include Defendants' full names on the docket.

[2] Harper also named "Medical Department" as a defendant. *See* ECF No. 1. Because Corizon was the contracted medical provider at RCI at all times relevant to Harper's claims, the court considers Corizon to be the proper defendant. "Medical Department" shall therefore be dismissed from suit.

This court deems a hearing unnecessary.  *See* Local Rule 105.6 (D. Md. 2018).  For the reasons set forth below, defendants' motions, both construed as motions for summary judgment, shall be granted.

## Background

### A.    *Harper's Claims*

In his unverified complaint, Harper raises claims about seven separate incidents.  *See* Complaint, ECF No. 1.  First, Harper alleges that on September 17, 2019, RCI correctional officers Sartin and King conspired to torture and inflict pain on him by "excessively spray[ing]" him with flogger multiple times, then fabricating a ticket indicating that they did so because Harper was fighting with his cell mate.  *Id.* at 2-3.  According to Harper, had there been a fight in progress, the officers would have called a code to open the cell door instead of spraying him multiple times through the food slot.  *Id.* at 3.

Second, Harper claims that at approximately 7 p.m. on December 4, 2019, he was "sexually assaulted by two officers who refuse to disclose their names."  *Id.* at 3.  Harper states that during a strip search, the two unnamed officers directed him to take his clothes off, drop to a squat, bend over at a 45-degree angle, and spread his buttocks with his hands.  *Id.*  The officers also directed him to stick his finger in his rectum, then into his mouth, and warned him that failure to comply would result in him being restrained and sprayed with flogger.  *Id.*

Third, Harper alleges that he had a sore abscess on his neck for three weeks and placed three sick call slips to the medical department, but medical staff refused to treat him.  *Id.* at 4. Harper claims that Nurse Ellen kept lying about scheduling a provider visit and only did so after Harper filed an Administrative Remedy Procedure ("ARP") grievance.  *Id.*  Harper avers that inmates are usually turned away by medical staff unless they have a life-threatening issue.  *Id.*

Fourth, Harper claims that at approximately 7 p.m. on July 11, 2019, he told RCI correctional officer Sword not to yell at him. *Id.* In response, Officer Sword verbally assaulted and sexually harassed him by saying he is "a black n**** and suck his white dick and he would stick a broom stick up [Harper's] shitty ass."

Harper's fifth claim is that inmates on the segregation unit at RCI are being fed cold food, sometimes over- or under-cooked, or are served insufficient portions. *Id.* Harper also complains that unsupervised inmates are serving the food, thus leading to unsanitary conditions "because we don't know [sic] what they are doing to our food." *Id.* Moreover, when there is bad weather such as rain, snow, or strong winds, inmates are directed to wait in line outside rather than inside the kitchen. *Id.* at 6.

Sixth, Harper alleges that correctional officers are constantly placing inmates' lives in danger because they leave their posts and fail to complete rounds to ensure inmate safety. *Id.* at 5. According to Harper, officers ignore inmate complaints regarding cell mate compatibility because they "want [inmates] to get in a physical altercation." *Id.*

Lastly, Harper takes issue with the ARP grievance process because "the officers have complete access [to] our forms an[d] able to discard whatever they please." *Id.* Harper alleges that the officers are disrespectful, and supervisors ridicule any complaints about their subordinates. *Id.* He also claims that Defendant Hoffman coerced him to sign off on a document by threatening him with segregation. *Id.* at 6.

**B.      *Harper's Medical Records***

Harper first complained to medical staff about his neck on June 20, 2019. *See* Medical Records, ECF No. 11-4 at 45. On that day, Mary Ellen Bryan, RN went to Harper's cell for a sick call regarding blood in his urine, when Harper asked her to look at his neck. *Id.* Bryan reminded

Harper that the sick call was for the blood in his urine.  *Id.*  She took a urine sample, then placed "a sick call for razor bump on chin."  *Id.*

On June 21, 2019, Harper submitted a sick call request stating he had a "huge bump under [his] chin[] and neck that has so brown lump of dodo and a foul smell," as well as constant gas with pain in his legs and back.  *Id.* at 124.  On June 22, 2019, Harper submitted another sick call request stating he had a huge bump on his chin and neck "with black foul odor and lump of dodo." *Id.* at 122.  In response to the requests, Marion Diaz, RN saw Harper during a sick call visit on June 25, 2019.  *Id.* at 50-51.  On examination, Diaz noted that Harper had a firm, raised lesion measuring approximately 2.5 centimeters (cm) on the left side under his chin, had no redness, and denied having any pain.  *Id.*  Diaz discussed her assessment with the onsite physician's assistant, who had "no new orders."  *Id.*  Diaz marked the site with a pen to monitor for increased size and directed Harper to use warm compresses, refrain from squeezing, and to return if the lesion increased in size or became infected.  *Id.*

On June 27, 2019, Plaintiff submitted a sick call request stating he had placed a sick call request about his neck and "they said they would call me back to treat my neck but [they] never call[ed] back."  *Id.* at 121.  In response, Nurse Bryan saw Harper in sick call on July 2, 2019, and noted that the lesion was 2.5 x 2.5 cm, with pustules, vesicles, or furuncles, as well as increased swelling signaling infection.[3]  *Id.* at 52.  Bryan referred Harper to a provider.  *Id.* at 53.

On July 7, 2019, Harper submitted a sick call request stating that he had been trying to get his neck treated but was being ignored by the medical department.  *Id.* at 120.  In response to the

---

[3] According to Crystal Jamison, PA, a pustule is a small pimple or blister on the skin containing pus; a vesicle is a small, fluid-filled cyst within the body; and a furuncle, also known as a boil, is a painful infection that forms around a hair follicle and contains pus.  Decl. of Crystal Jamison, ECF No. 11-3, ¶ 12. It is unclear from the documentation whether the lesion presented as a pustule, vesicle, or furuncle at the time of Harper's visit with Bryan.  *See id.*

request, Nurse Bryan saw Harper on July 9, 2019.  *Id.* at 54.  On examination, Bryan noted the presence of whiteheads, blackheads, or non-inflamed papules, with increased swelling signaling infection.  *Id.*  Bryan noted that Harper had been putting toothpaste on the area and she told him to stop.  *Id.*  Bryan also observed that the area looked like an ingrown hair.  *Id.*  Harper continued to await an appointment with a medical provider.  *Id.* at 55.

On July 10, 2019, Harper saw Crystal Jamison, PA for a scheduled provider visit.  *Id.* at 56.  On examination, Jamison observed a flesh-colored sebaceous cyst, round in shape and 2 cm in size.[4]  *Id.*  Jamison noted that Harper was "agreeable to cyst excision to alleviate discomfort," thus she used an anesthetic, excised the lesion, and placed a suture.  *Id.*  After the procedure, Jamison ordered Cephalexin, an antibiotic, and directed Harper to return for a follow up in one week.  *Id.*

### C.    Harper's Correctional Records

Records kept in the course of business at RCI indicate that at approximately 11:20 a.m. on September 17, 2019, Officer Sartin was conducting segregation unit reviews when he heard a commotion in Harper's cell.  Correctional Records, ECF No. 13-2 at 4.  Upon his arrival, Officer Sartin found Harper in a fist fight with his cell mate.  *Id.*  Officer Sartin gave two orders for the inmates to separate and "cuff up," but both were ignored.  *Id.*  At that time, Officer Sartin pulled out his MK-9 fogger and administered a quick burst.  *Id.*  He then saw Harper grab and choke his cell mate.  *Id.*  Officer King arrived on the scene and also ordered the inmates to cuff up; however, Harper continued to choke his cell mate.  *Id.*  Thus, Officer King administered pepper spray until

---

[4] According to Jamison, a sebaceous cyst is a common, noncancerous cyst of the skin that forms out of the sebaceous gland which produces the oil that coats hair and skin.  ECF No. 11-3 at ¶ 16.  If the gland or its duct is damaged or blocked, a cyst can develop.  *Id.*  Sebaceous cysts are most commonly found on the face, neck, back, and scalp and rarely cause pain or other symptoms.  *Id.*  They frequently require no treatment but can be removed if painful or infected, or if the appearance is a concern.  *Id.*

Harper released his cell mate. *Id.* After the inmates complied with orders to cuff up, they were taken to the medical unit for evaluation. *Id.* Harper was seen by Nurse Diaz, who noted that he had pepper spray exposure and a "small superficial scratch on right elbow" after "wrestling with his cellmate." *Id.* A Use of Force Incident Report completed by RCI Chief of Security Stacey Taylor concluded that Officers Sartin and King acted in accordance with established directives and policies. *Id.* at 2.

On December 4, 2019, after Harper alleged that he was sexually assaulted by two correctional officers who refused to disclose their names, Harper was seen by medical personnel pursuant to the Prison Rape Elimination Act ("PREA"), 34 U.S.C. §§ 30301-30309 (2018) protocol and a Serious Incident Report was prepared. *Id.* at 47-49. Based upon the seriousness of Harper's allegations, he was interviewed by Lt. Gardner on December 11, 2019, the same day Harper filed an ARP grievance regarding the incident. *Id.* at 50-53. During the interview, Harper asked Lt. Gardner questions about what a strip search entails and learned that a proper strip search includes removing the inmate's clothes, bending at a 45-degree angle, and spreading his buttocks to allow officers to look inside with a flashlight. *Id.* at 53. After the interview, Harper said he "was angry the way they strip search" but no longer felt that it was a PREA incident and signed a statement to that effect. *Id.* at 52-53. Lt. Hoffman was present for the interview but did not participate in the signing of the statement. Decl. of Stanford Hoffman, ECF No. 13-6, ¶¶ 3-5. Lt. Hoffman states that he has not coerced Harper into signing any document. *Id.* at ¶¶ 6-7.

With regard to Harper's claims that Officer Sword verbally and sexually harassed him, Officer Sword has submitted a declaration stating that on July 11, 2019, the day of the alleged incident, he was on duty in Housing Unit 4 on Tier C while Harper was on Tier D. Decl. of

Matthew Sword, ECF No. 13-5, ¶ 3.   Officer Sword states that he did not see Harper or say anything to him on that date.   *Id.*

### Standards of Review

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).   "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim.   However, the complaint must allege sufficient facts to establish those elements."   *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'"   *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)).   "A fact is material if it 'might affect the outcome of the suit under the governing law.'"   *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).   Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]"   *Anderson*, 477 U.S. at 247-48 (emphasis in original).   A court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015).   At the same

time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.,* 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

Defendants' motions are styled as motions to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  Motions styled in this manner implicate the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty*., 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).  Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth*., 149 F.3d 253, 260-61 (4th Cir. 1998).  When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious."  *Laughlin*, 149 F.3d at 261.

Because Defendants filed motions styled as motions to dismiss, or in the alternative, for summary judgment, Harper was on notice that the court could treat the motions as ones for summary judgment and rule on that basis.  Accordingly, the court will review the claims against Defendants under the Rule 56(a) standard and will consider the exhibits filed in support of the dispositive motions.

The court informed Harper that he may file an opposition and advised him of the consequences of failing to do so.  ECF Nos. 12, 14.  Harper, however, has chosen not to file a response, instead relying solely on his unverified complaint.  ECF No. 1.  Because Harper's

complaint is unverified, its factual assertions may not be considered in opposition to Defendants'

motions. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); Fed. R. Civ. P. 56(c)(1)(A).

      The court is mindful that Harper is a self-represented litigant. A federal court must liberally

construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious

cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean a

court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller*

*v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir.1990). A court cannot assume the

existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

**Discussion**

**I.**      **Corizon**

      Harper's claims against Corizon raise whether he has been denied adequate medical

treatment in violation of the Eighth Amendment to the United States Constitution. The Eighth

Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee

against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To state an

Eighth Amendment claim for denial of medical care, Harper must demonstrate that Corizon's acts

or omissions amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*,

429 U.S. 97, 106 (1976).

      Deliberate indifference to a serious medical need requires proof that, objectively, the

prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff

were aware of the need for medical attention but failed to either provide it or ensure it was

available. *See Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994); *see also Heyer v. U.S. Bureau of*

*Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir.

2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at

issue must be serious.  *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).  "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

After a serious medical need is established, a successful claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 839-40.  "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'"  *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).  The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious."  *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

"Deliberate indifference is a very high standard – a showing of mere negligence will not meet it."  *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999).  *See also Jackson*, 775 F.3d at 178 ("[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference.").  "[T]he Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences."  *Grayson*,

195 F.3d at 695-96; *see also Jackson*, 775 F.3d at 178 (describing the applicable standard as "exacting").  A mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation, absent exceptional circumstances. *Scinto*, 841 F.3d at 225.  Further, the inmate's right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable."  *United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011) (citing *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977)).

The undisputed evidence before this Court establishes that Harper received constitutionally adequate medical care.  The declaration of Harper's medical provider, along with his medical records, demonstrate that Harper first complained about the bump on his neck on June 20, 2019, placed sick calls on June 21 and 22, 2019, and was seen at a sick call by June 25, 2019.  At the time of his visit, no redness was observed, and Harper did not report any pain.  Therefore, Harper was advised to monitor the bump and to return if it became infected.  Harper placed another sick call on June 27, 2019, and was seen on July 2, 2019, at which time the bump appeared to be infected.  Harper was immediately referred to a provider and was seen on July 10, 2019, for cyst excision.  After the procedure, Harper was given an antibiotic and directed to return for a follow up.  Harper did not express any other concerns thereafter.

Viewing the evidence in the light most favorable to Harper, the court cannot find that the medical staff were deliberately indifferent to his needs.  Corizon staff scheduled Harper for sick calls and provider visits, continuously evaluated his condition, and responded to his complaints. None of the medical staff's decisions amounted to an act or omission "for the very purpose of causing harm or with knowledge that harm will result."  *Farmer*, 511 U.S. at 835.  An Eighth Amendment claim is also not presented where, as here, Harper alleges that Corizon did not

provided the exact medical treatment that he desired.  As previously indicated, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir.1970)).  Nor does Harper claim that any delay in the excision exposed him to a serious or significant injury. *See Brown v. Comm'r of Cecil Cty. Jail*, 501 F. Supp. 1124, 1126 (D. Md. 1980) (delay "does not violate the Eighth Amendment where the seriousness of the injury is not apparent").

Because Corizon staff gave regular attention to Harper's medical complaints, the court concludes that the record, even viewed in the light most favorable to Harper, does not support a finding of deliberate indifference to his medical needs.

Moreover, if Harper is attempting to hold Corizon, as a corporate defendant, liable for an Eighth Amendment violation, the claim likewise fails.  Even though a private corporation can be found to engage in state action -- a necessary precondition for § 1983 liability -- the involvement of the corporation cannot be predicated on a respondeat superior liability theory. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.,* 678 F.2d 504, 506 (4th Cir. 1982); *Clark v. Maryland Dep't of Public Safety and Correctional Services*, 316 Fed. Appx. 279, 282 (4th Cir. 2009).  Officials acting in a supervisory capacity also cannot be held liable for the acts of their subordinates unless the supervisor's "indifference or tacit authorization of subordinates' misconduct" can be deemed to have caused the injury to the plaintiff. *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).  No record evidence supports this theory of relief extending to

Corizon, especially given that no record evidence allows a rational trier of fact to find Corizon's staff liable.  Thus, summary judgment is granted in Corizon's favor.[5]

## II.     Correctional Defendants

Harper's remaining claims, brought against the Correctional Defendants, are as follows: (1) Officers Sartin and King used excessive force when they sprayed him with fogger multiple times with no justification; (2) he was "sexually assaulted by two officers who refuse to disclose their names;" (3) Officer Sword verbally assaulted and sexually harassed him; (4) there are unconstitutional conditions of confinement with regard to food service at RCI and the correctional staff's constant failure to protect inmates; and (5) the ARP grievance process is unconstitutional.

In response, the Correctional Defendants assert that: (1) the Eleventh Amendment bars this suit against the Correctional Defendants in their official capacities; (2) Harper has not suffered from an excessive use of force; (3) Harper has failed to state a constitutional claim; (4) Harper has failed to exhaust his administrative remedies; and (5) the Correctional Defendants are entitled to qualified immunity.  ECF No. 13-1.

The court shall address each of Harper's claims in turn.

### A.  Excessive Force

Harper claims that Officers Sartin and King used excessive force when they sprayed him with fogger multiple times with no justification.  Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 6-7.  The court must look at the need for the application of force, the relationship between that need and the

---

[5] The court declines to consider any state tort claims Harper has advanced. "When, as here, the federal claim is dismissed early in the case, the federal courts are inclined to dismiss the state law claims without prejudice rather than retain supplemental jurisdiction." *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-727 (1966)).

amount of force applied, the extent of the injury inflicted, the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials, and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The absence of significant injury, alone, is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). The extent of injury incurred is one factor whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* at 38.

Here, the record reflects that Officers Sartin and King used their foggers in an effort to stop Harper's fight with his cellmate. The Use of Force Report and Nurse Diaz's notes during Harper's subsequent medical visit confirm that Harper had been wrestling with his cell mate, and that the officers used their foggers in order to gain control of the situation. Because Harper continued to choke his cell mate after the officers' initial burst of fogger, Officers Sartin and King acted reasonably in continuing to spray the cell until Harper complied with their instructions. In sum, it appears that any force used by the officers was applied in a good faith effort to maintain or restore discipline. Thus, Officers Sartin and King are entitled to summary judgment on Harper's excessive force claim.

### B. Strip Search

Next, Harper claims that he was "sexually assaulted by two officers who refuse to disclose their names." As an initial matter, PREA authorized grant money and created a commission to study rape in prisons, but it did not create a private right of action for inmates. *See Williams v. Dovey*, No. 8:15-cv-1891, 2016 WL 810707 at *7 (D. Md. Mar. 2, 2016); *DeLonta v. Clarke*, No. 7:11-cv-00483, 2012 WL 4458648, at *3 (W.D. Va. Sept. 11, 2012), *aff'd sub nom*, *DeLonta v.*

*Pruitt*, 548 F. App'x 938 (4th Cir. 2013).  Therefore, to the extent Harper raises a PREA claim, it necessarily fails as a matter of law.

To the extent Harper alleges that his constitutional rights were violated, his claim fares no better.  The Fourth Amendment guards against unreasonable searches and seizures.  U.S. Const. amend. IV.  While the Fourth Amendment applies to lawfully confined prisoners, inmates have much more limited privacy interests than those not incarcerated.  *Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979); *Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir. 1981); *Hudson v. Goodlander*, 494 F. Supp. 890, 891 (D. Md. 1980).  A body cavity search does not violate an inmate's Fourth Amendment rights if the search is reasonable and not motivated by punitive intent.  *Id.* at 545-46, 558-61.  To determine if such a search is reasonable, courts consider: 1) the scope of the intrusion; 2) the manner in which it was conducted; 3) the justification for the search; and 4) the place in which it was conducted.  *Id.* at 559.  "In *Bell*, the Supreme Court held that a reasonableness inquiry requires a court to balance the need for the particular search against the invasion of the personal rights that the search entailed."  *Coley v. Harris*, 30 F. Supp. 3d 428, 434 (D. Md. July 7, 2014) (quoting *Amaechi v. West*, 237 F.3d 356, 361 (4th Cir. 2001)).  Courts should also give great deference to decisions made by officials relating to their administration of a prison facility.  *Bell,* 441 U.S. at 547.  As the Supreme Court has cautioned, "[t]he difficulties of operating a detention center must not be underestimated by the courts."  *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 326 (2012).

A forced strip search is deeply intrusive, but the record indicates that the balance of the *Bell* factors supports the reasonableness of the search at issue in this case.  After being informed about strip search procedures, Harper acknowledged that the search was performed properly, and that he was only angry about the incident.  Moreover, Harper does not allege that the search was

unjustified.  Thus, the search was not unreasonable under the Fourth Amendment, and the court

will grant the Correctional Defendants' Motion for Summary Judgment on this claim.

### C.  Verbal Sexual Harassment

Harper claims that Officer Sword verbally assaulted and sexually harassed him.  Verbal

abuse of inmates by guards, without more, does not establish an Eighth Amendment violation.

*Henslee v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005); *Collins v. Cundy*, 603 F.2d 825, 827

(10th Cir. 1979).  Specifically, "[a]lthough prisoners have a right to be free from sexual abuse,

whether at the hands of fellow inmates or prison guards, the Eighth Amendment's protections do

not necessarily extend to mere verbal sexual harassment.'"  *Jackson v. Holley*, 666 F. App'x 242,

244 (4th Cir. 2016) (per curiam) (quoting *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004)).

Officer Sword is thus entitled to summary judgment on this claim.

### D.  Conditions of Confinement and Failure to Protect

Next, Harper alleges that there are unconstitutional conditions of confinement with regard

to food service at RCI.  Specifically, he claims that inmates are served cold food, sometimes over-

or under-cooked, or insufficient portions.  He also complains that unsupervised inmates are serving

the food, thus leading to unsanitary conditions, and that they are sometimes directed to line up

outside in bad weather.  Harper also claims that correctional officers constantly fail to protect

inmates at RCI because they leave their posts, fail to do rounds, and ignore inmate's complaints

about their cell mates.

Conditions of confinement that "involve wanton and unnecessary infliction of pain," or

which "deprive inmates of the minimal civilized measure of life's necessities," may amount to

cruel and unusual punishment.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  However,

conditions that are merely restrictive or even harsh "are part of the penalty that criminal offenders

pay for their offenses against society." *Id.*  In order to establish the imposition of cruel and unusual punishment in conditions of confinement, a prisoner must prove two elements:  that "the deprivation of [a] basic human need was *objectively* sufficiently serious, and that *subjectively* the officials act[ed] with a sufficiently culpable state of mind."  *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (citation omitted).  Similarly, to establish a failure to protect claim, a prisoner must make two showings: first, that he suffered significant injury or was "'incarcerated under conditions posing a substantial risk of serious harm;'" and second, that the prison official at issue had a "'sufficiently culpable state of mind.'"  *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer,* 511 U.S. at 834).

The objective prong of a conditions of confinement claim requires the prisoner to "'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions."  *Shakka*, 71 F.3d at 166 (quoting *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993)); *accord De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003).  Thus, "a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year" violates the Eighth Amendment, even if "the complaining inmate shows no serious current symptoms."  *Helling v. McKinney*, 509 U.S. 25, 33-34 (1993).

To establish a sufficiently culpable state of mind, there must be evidence of deliberate indifference, in that a known, excessive risk of harm to the inmate's health or safety was disregarded.  *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (applying the deliberate indifference standard to conditions of confinement claims); *see also Thompson v. Virginia*, 878 F.3d 89, 107 (4th Cir. 2017).  "[T]he test is whether the guards know the plaintiff inmate faces a

serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N.C. Dep't of Corrs.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)).  To survive summary judgment, plaintiff must show facts sufficient for a reasonable factfinder to conclude that (1) he was exposed to a substantial risk of serious harm and (2) the defendants knew of and disregarded that risk. *Thompson*, 878 F.3d at 107 (citing *Farmer*, 511 U.S. at 834, 837-38) (internal quotations omitted).

Here, Harper has not alleged facts to support a finding that he suffered a sufficiently serious injury either as a result of the food service conditions or the correctional officers' actions.  Nor has he established that the Correctional Defendants knew of and disregarded any risk.  Accordingly, there is no genuine issue of material fact on Harper's Eighth Amendment claims, and the court will grant the Correctional Defendants' motion as to these issues.

### E.  ARP Grievance Process

Lastly, Harper asserts that the ARP grievance process at RCI is unconstitutional.  To the extent Harper complains that the Correctional Defendants denied him due process of law by failing to properly process his ARPs, his claim fails.  Violations of state laws or regulations do not establish a basis for a federal procedural due process claim. *See Weller*, 901 F.2d at 392.  Likewise, the failure to follow prison directives or regulations does not, in and of itself, establish a violation of due process. *See Kitchen v. Ickes*, 116 F. Supp. 3d 613, 629 & n.6 (D. Md. 2015) (citing *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996)).

Even where a state has created internal prison procedures, the procedural protections of the Due Process Clause apply only to actions that implicate a protected liberty interest, such as those that result in the loss of good time credits, *see Ewell v. Murray*, 11 F.3d 482, 488 (4th Cir. 1993), or otherwise lengthen the amount of time an inmate must serve, *see Montanye v. Haymes*, 427 U.S.

236, 242 (1976), as well as those that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," such as transfer to a mental institution or involuntary administration of medication, *see Sandin v. Conner*, 515 U.S. 472, 477-78, 483-84 (1995). Harper's assertion that correctional staff are free to discard any ARP grievances do not meet these standards. Therefore, the court will grant summary judgment to the Correctional Defendants on this claim.

### Conclusion

Defendant "Medical Department" is dismissed. The remaining defendants' motions, construed as motions for summary judgment, are granted as to Harper's constitutional claims, and any state law claims are dismissed without prejudice.[6]

A separate Order follows.


Dated: February 12, 2021                    _____/s/_____
                                            Stephanie A. Gallagher
                                            United States District Judge

---

[6] In light of this ruling, the court need not address the Correctional Defendants' remaining arguments.

19